UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.: 1:21-cv-22939

LAUREN HOBBS,

      Plaintiff,

v.

GUCCI AMERICA INC.,

      Defendant.
_____/

## COMPLAINT

Plaintiff, LAUREN HOBBS ("Plaintiff"), sues Defendant, GUCCI AMERICA, INC. ("Defendant"), for color and discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). Plaintiff states as follows:

## JURISDICTION AND PARTIES

1. Plaintiff is an individual and citizen of Florida, who at all material times hereto has resided in Miami-Dade County, Florida.

2. Defendant is a foreign corporation that conducts business throughout the State of Florida.

3. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.00.

1

4. Venue is proper in the Miami Division of the United States District Court for the Southern District of Florida because Defendant conducts business in Miami-Dade County, Florida.

5. All conditions precedent to the bringing of this action have been satisfied and/or waived. On or about March 18, 2021, Plaintiff timely dual filed her Charge of Discrimination (the "Charge") alleging color and race discrimination and retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR"). The EEOC issued a Dismissal and Notice of Rights on or about June 22, 2021.

## General Allegations

6. Plaintiff re-alleges, as if fully set forth herein, the allegations of paragraphs 1 through 5 above.

7. Plaintiff is a black African American female.

8. Plaintiff began working for Defendant on or about June 2018 as a Team Manager/Client Relations Manager/Men's Department Manager (the "Position") for Defendant's Miami Design District location (the "Store"). Plaintiff was one of two black/African American employees at the Store and the only one with a leadership role.

9. Plaintiff was an excellent employee and was well-liked by customers and colleagues.

10. Despite her hard work and satisfactory performance, Plaintiff was subjected to discriminatory and retaliatory treatment throughout her employment with Defendant.

11. After the death of George Floyd, a then-Store Director, Robert Buros ("Mr. Buros"), held a meeting during which he made employees watch a video of black African

Americans looting Gucci stores. When he began the meeting, Mr. Buros stated he was white and could not relate. The video served no purpose other than to instill fear in the employees who worked at the Store and left many of them visibly uncomfortable. Several employees raised concerns that black African Americans would come into the store to riot or steal. Plaintiff was left feeling marginalized and embarrassed because of the way black African Americans had been depicted – as violent and as thieves – by her supervisor in an open meeting.

12. Plaintiff reported the incident to Helen Kostis ("Ms. Kostis"), Defendant's Human Resources Regional Southeast, but Ms. Kostis failed to address it. Ms. Kostis' failure to address complaints of discrimination by Ms. Kostis became a common theme throughout Plaintiff's employment.

13. On another occasion, during a conversation relating to career growth and opportunities with Defendant's Regional Director of the Southeast, Laureina Velasquez ("Ms. Velasquez"), Ms. Velasquez told Plaintiff she should not worry about her professional growth because she is a "young black woman."

14. Later, Ms. Velasquez referred to Plaintiff as an "expensive hire," which left Plaintiff feeling like a price had been placed on her worth, as if she were a slave.

15. As she had in the past, Plaintiff complained of discrimination by Ms. Velasquez to Ms. Kostis, who again failed to address it.

16. After her complaint, and in retaliation because she had complained about her, Plaintiff was denied a handful of Assistant Sore Director ("ASD") roles by Ms. Velasquez, who claimed Plaintiff was unqualified for the ASD roles when in fact Plaintiff had previously been offered the same role in another region. None of the individuals who

received the roles were black or African Americans and all had been working for Defendant for less time than Plaintiff had.

17. Another Store leader, Stefan Penuri ("Mr. Penuri"), also exhibited discriminatory animus toward blacks and African Americans. Mr. Penuri refused to interact with or introduce himself to black/African American top clients, yet he eagerly did so with Caucasian or Latin clients that visited the Store. Mr. Penuri's conduct is reflective of the type of discriminatory animus that existed throughout the leadership at the store.

18. On or about September 16, 2020, Defendant issued a Final Warning to Plaintiff for an alleged violation of Defendant's Personal Protective Equipment ("PPE") policy and for a cash management issue. Specifically, Defendant alleged Plaintiff had failed to comply with its PPE policy by pulling her mask down while speaking during a morning meeting and by not wearing a mask while in the office when another employee walked in. Defendant also alleged Plaintiff had violated its cash management policy by leaving cash deposits in the office to be double counted by another manager.

19. At the time of the Final Warning and after, there was little to no guidance from store management about the proper steps to be taken because of the COVID-19 pandemic. Compliance with social distancing, capacity requirements and mask wearing were inconsistent throughout the Store and by employees. There were not no directives given relating to social distancing and PPE. Nor did management or other employees comply with the PPE policy that Defendant later alleged existed and was violated when issuing the Final Warning to Plaintiff.

20. In fact, during that time, Mr. Penuri catered lunch for the team and scheduled overlaps and approved lunches where multiple employees were eating in close

proximity for a period of up to one hour at a time without a mask on. Between in or about April 2020 and in or about November 2020, eating at the round table was common practice – two or four people would eat all at once in one-hour increments with no mask. While sitting at the table, employees were not six feet apart.

21. At no point were any individuals written up for failing to wear a mask, for having lunch at the table for extended periods of time, and for not socially distancing between March 2020 and September 16, 2020.

22. Further, since Plaintiff began working for Defendant in or about 2018, deposits had always been left in the office, in the stockroom, or in the cash wrap area, to be double counted and management never had raised an issue with it. In fact, between her hire date and September 16, 2020, no other leader at the Store received a cash management Final Warning other than Plaintiff.

23. Plaintiff received the Final Warning because she is black and African American. Other employees outside of her protected classes who had engaged in the same or similar conduct were not disciplined.

24. Plaintiff complained of discrimination to Defendant's Human Resources Vice President, Lucinda Russo ("Ms. Russo"), who acknowledged it was an unfair write up relating to the PPE given the absence of PPE directives.

25. On or about November 13, 2020, a local restaurant catered lunch for the team. Plaintiff took the food into the same area where employees would gather unmasked to do internal inventory and for external parties. Three employees went to the lunch area to eat. Plaintiff asked the employees to wash their hands and be mindful of social distancing. The employees ate in less than ten minutes and returned to work.

26. On December 4, 2020, Plaintiff was terminated for alleged ongoing violations of Defendant's PPE policy, which remained unclear. During the termination meeting, Mr. Penuri referenced the Final Warning that Plaintiff had been placed on relating to PPE even though Ms. Russo had acknowledged it had been an unfair write up.

27. By the time of her termination, Plaintiff had complained of discrimination to Human Resources no fewer than 11 times.

28. Plaintiff was subjected to discriminatory and retaliatory treatment by Defendant.

### COUNT I – COLOR DISCRIMINATION IN VIOLATION OF TITLE VII, 42 U.S.C. § 2000e et seq.

29. Plaintiff adopts and re-alleges paragraphs 1 through 28 above as if set forth fully herein.

30. At all material times, Defendant was an "employer" subject to the provisions of Title VII, 42 U.S.C. § 2000e(b).

31. At all material times, Plaintiff was an "employee" entitled to the protections of Title VII, 42 U.S.C. § 2000e(f).

32. Title VII, 42 U.S.C. § 2000e-2(a) prohibits discrimination against an employee based on color.

33. Plaintiff is black.

34. Defendant and/or its agents or employees acting on its behalf discriminated against Plaintiff based on her color by treating her differently from and less preferably than, similarly situated non-black employees in violation of Title VII.

35. Any reasons provided by Defendant for Plaintiff's termination are pre-textual for the real reasons – Plaintiff's color.

36. Further, Plaintiff's color played a motivating factor in Defendant's decision to terminate Plaintiff.

37. Defendant's conduct was intentional, deliberate, and willful and in callous disregard of Plaintiff's rights.

38. Defendant's acts of color discrimination caused Plaintiff to suffer economic losses, mental and emotional distress, embarrassment, and humiliation.

39. By reason of Defendant's discrimination, Plaintiff is entitled to all legal and equitable remedies available under Title VII.

WHEREFORE, Plaintiff demands judgment against Defendant for lost back pay, front pay, compensatory damages, punitive damages, pre- and post- judgment interest, taxable costs, and a reasonable attorney's fees pursuant to 42 U.S.C. § 2000e-5(k) and for all other relief the Court deems just and proper.

**COUNT II – RACE DISCRIMINATION IN VIOLATION OF
TITLE VII, 42 U.S.C. § 2000e et seq.**

40. Plaintiff adopts and re-alleges paragraphs 1 through 28 above as if set forth fully herein.

41. At all material times, Defendant was an "employer" subject to the provisions of Title VII, 42 U.S.C. § 2000e(b).

42. At all material times, Plaintiff was an "employee" entitled to the protections of Title VII, 42 U.S.C. § 2000e(f).

43. Title VII, 42 U.S.C. § 2000e-2(a) prohibits discrimination against an employee based on race.

44. Plaintiff is African American.

45. Defendant and/or its agents or employees acting on its behalf discriminated

against Plaintiff based on her race by treating her differently from and less preferably than, similarly situated non-African America employees in violation of Title VII.

46. Any reasons provided by Defendant for Plaintiff's termination are pre-textual for the real reasons – Plaintiff's race.

47. Further, Plaintiff's race played a motivating factor in Defendant's decision to terminate Plaintiff.

48. Defendant's conduct was intentional, deliberate, and willful and in callous disregard of Plaintiff's rights.

49. Defendant's acts of race discrimination caused Plaintiff to suffer economic losses, mental and emotional distress, embarrassment, and humiliation.

50. By reason of Defendant's discrimination, Plaintiff is entitled to all legal and equitable remedies available under Title VII.

WHEREFORE, Plaintiff demands judgment against Defendant for lost back pay, front pay, compensatory damages, punitive damages, pre- and post- judgment interest, taxable costs, and a reasonable attorney's fees pursuant to 42 U.S.C. § 2000e-5(k) and for all other relief the Court deems just and proper.

### COUNT III– RETALIATION IN VIOLATION OF TITLE VII (42 U.S.C. § 2000e *et seq.*)

51. Plaintiff adopts and re-alleges paragraphs 1 through 28 above as if set forth fully herein.

52. At all material times, Defendant was an "employer" subject to the provisions of Title VII, 42 U.S.C. § 2000e(b).

53. At all material times, Plaintiff was a black, African American "employee" entitled to the protections of Title VII, 42 U.S.C. § 2000e(f).

54. Title VII, 42 U.S.C. § 2000e-3 prohibits discrimination against an employee because she opposes any practice made an unlawful employment practice by Title VII.

55. Defendant and/or its agents or employees acting on its behalf retaliated against Plaintiff because she complained of discriminatory conduct.

56. Defendant's conduct was intentional, deliberate, and willful and in callous disregard of Plaintiff's rights.

57. Defendant's acts of retaliation caused Plaintiff to suffer economic losses, mental and emotional distress, embarrassment and humiliation.

58. By reason of Defendant's discrimination, Plaintiff is entitled to all legal and equitable remedies available under Title VII.

WHEREFORE, Plaintiff demands judgment against Defendant for lost back pay, front pay, compensatory damages, punitive damages, pre- and post- judgment interest, taxable costs, and a reasonable attorney's fees pursuant to 42 U.S.C. § 2000e-5(k) and for all other relief the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury of all issues so triable.

Dated this 12th day of August 2021.

By: /s/ Diane P. Perez
Diane P. Perez, B.C.S. (41869)
E-mail: diane@dianeperezlaw.com
**DIANE PEREZ, P.A.**
121 Alhambra Plaza, Suite 1500
Coral Gables, Florida 33134
Telephone: (305) 985-5676
Facsimile: (305) 985-5677
Attorney for Plaintiff